UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOROLOS GERGES ESHAK SHEHATA (A# 249-119-983), <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al., <br><br> Respondents. | No.  1:26-cv-02840-DJC-SCR <br><br><br> FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I.      Factual and Procedural History**

Petitioner is a citizen and national of Egypt who fled religious persecution to seek asylum in the United States.  ECF No. 1 at 6-7, ¶¶ 16-17.  Customs and Border Protection ("CBP") agents encountered and detained Petitioner on November 20, 2024, roughly an hour after he crossed into the United States near Tecate, California.  Id. at 7, ¶ 18; ECF No. 5 at 13.  Immigration officials issued Petitioner a notice to appear ("NTA") on February 6, 2025, after an asylum officer determined he demonstrated a credible fear of persecution.  ECF No. 1 at 7, ¶ 19; ECF No. 5 at 14-17 (NTA).  Petitioner has remained in immigration detention since November 20, 2024, and is currently held at the California City Detention Center, within this judicial district.  ECF No. 1 at

1

3, ¶ 2.  On March 18, 2026, an immigration judge ("IJ") denied Petitioner's request for a custody re-determination proceeding under 8 C.F.R. § 1236.1 on grounds he was detained under 8 U.S.C. § 1225(b)(1) and not a member of the "Bond Eligible Class" of Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1075 (C.D. Cal. 2025).  ECF No. 5 at 22-23.

Petitioner filed the counseled § 2241 petition on April 14, 2026, challenging the legality of his 17-month detention without bond under the Due Process Clause of the Fifth Amendment. ECF No. 1 at 12-15, ¶¶ 36-46.  In their return, Respondents acknowledge that this case "is not substantially different from" Tigranyan v. Warden of California City Det., No. 1:25-cv-1554 DJC SCR, 2026 WL 91765 (E.D. Cal. Jan. 13, 2026), report and recommendation adopted, No. 1:25-cv-1554 DJC SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026), a case in which the undersigned determined that due process required the government to provide a bond hearing to a noncitizen detained under 8 U.S.C. § 1225(b)(1) for 14 months.  ECF No. 5 at 1.  Still, Respondents argue Petitioner's detention is not unreasonable given he has requested a continuance of his removal proceedings.  Id. at 8 (citing Demore v. Kim, 538 U.S. at 530-531(2003)).  Further, if the Court orders relief, Respondents request it be a bond hearing instead of Petitioner's immediate release. Id.  Petitioner filed a brief reply urging the Court to follow Tigranyan and order Respondents to provide him with a bond hearing before an IJ within 14 days.  ECF No. 6.

**II.    Legal Standards**

**A.  Constitutional Standards**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law.  Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has

2

consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

3

**B.     Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i).  But if such non-citizen "indicates either an intention to apply for asylum . . . or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii).  While awaiting this credible fear interview, the non-citizen is to remain detained.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

Immigration records submitted by respondents show that officials initially processed Petitioner for expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i) and 8 C.F.R. § 235.15.  ECF No. 5 at 13.  After an asylum officer determined Petitioner had demonstrated a credible dear of persecution, officials vacated expedited removal proceedings and issued Petitioner an NTA dated February 6, 2025.  Id. at 14-17.  Accordingly, the undersigned finds that Petitioner's detention pending resolution of his asylum claim is governed by 8 U.S.C. § § 1225(b)(1)(B)(ii).

Based on this finding, the petition's discussion of Maldonado Bautista is inapposite.  See ECF No. 1 at 9-10, ¶¶ 24-25; id. at 11, ¶¶ 31-32.  Plaintiff is not a member of its Bond Eligible Class, which expressly excluded noncitizens are "subject to detention under . . . § 1225(b)(1)[.]" Maldonado Bautista, 813 F. Supp. 3d at 1078 (C.D. Cal. 2025).  Thus, the IJ did not err in denying Petitioner's request for custody re-determination under 8 C.F.R. § 1236.1, a regulation implementing 8 U.S.C. § 1226(a), in the order dated March 18, 2026.  See ECF No. 5 at 22-23. But as explained below, the lack of a statutory right to custody re-determination under § 1225(b)(1) does not foreclose bond as remedy for prolonged immigration detention under the Due Process Clause on an as-applied basis.

////

////

4

### III.    Analysis

In reviewing Petitioner's due process challenge—which the undersigned construes as sounding in procedural due process[1]— the Court turns first to the question of whether Petitioner has a protected liberty interest from prolonged detention during his removal proceedings.  While Petitioner's immigration case will at some point have a "definite termination point," there is no clear end in sight to his ongoing detention, which has now lasted for over 17 months.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").  The record does not provide this Court with any time frame in which Petitioner's removal proceedings will ultimately be resolved.  In such circumstance, even mandatory detention statutes like § 1225(b)(1) and their implementing regulations are subject to constitutional limitations on an as-applied basis.  See, e.g., Nielsen v. Preap, 586 U.S. 392, 420 (2019); Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring).  Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek protections against prolonged detention in his individualized circumstances.[2]

Having so found, the Court applies the Mathews v. Eldridge, 424 U.S. 319 (1976), framework to determine whether Petitioner is entitled to a bond hearing during the pendency of his removal proceedings.  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention).

---

[1]  This is evident from, *inter alia*, Petitioner's suggestion that the Court use the six-factor test from Banda v. McAleenan, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).  The undersigned has considered Banda but finds Mathews to be the appropriate procedural due process framework.

[2]  Respondents briefly argue that Petitioner possesses "only those rights regarding admission that Congress provided by statute," and "the Due Process Clause provides nothing more."  ECF No. 5 at 7 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020)).  However, Thuraissigiam is materially distinguishable from this case.  Its "discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."  Padilla, 704 F. Supp. 3d at 1171-72.  Thuraissigiam "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections."  Padilla, 704 F. Supp. 3d at 1172.

### 1. Private Interest

Turning to the first factor in Mathews, Petitioner has a strong liberty interest in avoiding prolonged detention without any bond hearing before a neutral arbiter. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Petitioner has been detained for over 17 months. Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, Petitioner's detention qualifies as prolonged. See Zadvydas, 533 U.S. at 701; Tigranyan, 2026 WL 91765 (finding a 14-month detention under § 1225(b) qualified as prolonged), adopted by 2026 WL 130843. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez v. Garland, 631 F.Supp.3d 870, 880 (E.D. Cal. 2022) ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.") (internal citation omitted).

Respondents offer evidence that on May 12, 2025, Petitioner sought and received a continuance of a hearing before an IJ that was scheduled for August 21, 2025. ECF No 5 at 19-20. But this single continuance request does not explain why Petitioner's removal proceedings have stretched well into 2026, and Respondents offer no evidence that the May 2025 continuance request was a dilatory tactic on Petitioner's part. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process.") (citation omitted). Further, if Petitioner appeals the IJ's eventual ruling, he "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also Lopez, 631 F. Supp. 3d at 880–81 (finding the petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). Thus, despite being in custody for 17 months, there is no clear end date for Petitioner's detention. For all these reasons, the first Mathews factor favors Petitioner.

///

### 2. Risk of Erroneous Deprivation

"[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); see also, Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional").  In Petitioner's case, a bond hearing is a critical procedural safeguard because it provides both the non-citizen and the government with an opportunity to present evidence and to be heard by a neutral adjudicator.  This Mathews factor also favors Petitioner.

### 3. Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.  "[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-0955 SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted).  "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted).  Thus, "[p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I. & N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020).  Moreover, a bond hearing involves a "minimal" fiscal and administrative burden. Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  In sum, this factor also weighs in favor of Petitioner.

In light of this Mathews analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted and Respondents be ordered to provide Petitioner a bond hearing before an IJ within 14 days where the IJ must order Petitioner released unless Petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing

7

evidence.  See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money.").[3]

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner Korolos Gerges Eshak Shehata's (A# 249-119-983) application for a writ of habeas corpus (ECF No. 1) be granted.

2.      Respondents be ordered to provide Petitioner with a bond hearing before an IJ within fourteen (14) days where the IJ must order Petitioner released unless Petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing evidence.

3.      Within seven (7) days from the date of the bond hearing, Respondents be directed to file a notice in this court certifying compliance with the above provision.

4.      This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5.  The Clerk of Court be directed to enter judgment in favor of Petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with

---

[3]  While the procedural due process framework is sufficient for resolving this petition, the undersigned notes that substantive due process would also dictate that a bond hearing is necessary to test whether further prolonged detention is justified.  See Padilla, 704 F. Supp. 3d at 1172 (recognizing need for bond hearings under substantive due process because "non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); see also Doe v. Beccera, 732 F. Supp. 3d 1071 (N.D. Cal. 2024) (applying five-factor test "regarding detention before criminal trial and civil commitment proceedings [to determine] whether continued detention" under another mandatory detention statute, 8 U.S.C. § 1226(c), "violates substantive due process").

the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 7, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE